# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private (E1) RYAN T. MCGEE**
**United States Army, Appellant**

ARMY 20130824

Headquarters, 7th Infantry Division
Jeffery D. Lippert, Military Judge
Lieutenant Colonel Michael S. Devine, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Jason J. Elmore, JA; Major Yolanda McCray Jones, JA (on brief).

For Appellee:  Major A. G. Courie, III, JA; Major Steven J. Collins, JA; Lieutenant Colonel Gregory A. Marchand, JA (on brief).

15 September 2015

-------------------------------------
SUMMARY DISPOSITION
-------------------------------------

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of conspiracy, one specification of absence without leave, four specifications of wrongful disposition of military property, three specifications of larceny of military property, and one specification of housebreaking in violation of Articles 81, 86, 108, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886, 908, 921 and 930 (2012) [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge and five months confinement.  The convening authority approved only so much of the sentence as provided for four months confinement and a bad-conduct discharge.  He also credited appellant with seven days pretrial confinement credit.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises two assignments of error, one of which merits discussion and relief.

## BACKGROUND

Between 1 April 2013 and 21 April 2013, appellant and Specialist (SPC) J.R.H., entered into an agreement to unlawfully enter into a unit supply room to steal military property and then sell it.

The government charged appellant with two specifications of conspiracy under Article 81, UCMJ – one for the agreement to unlawfully enter the unit supply room and steal military property, and a second specification for the agreement to sell the military property.

With regard to the conspiracy to unlawfully enter the supply room and steal military property, the pertinent exchange during the providence inquiry was as follows:

> ACC:  [SPC J.R.H.] actually brought it up to me and he said, "Hey, I've got a quick way to make some easy cash."  I said, "What's going on?" He said. "Well, I've got a key.  We're going to get into one of the supply rooms and see what we can get our hands on basically."
>
> . . . .
>
> MJ:  . . . when you went into that supply room, into that building, you intended to steal something?
>
> ACC:  Yes, sir.

The judge then turned to the conspiracy to sell military property:

> MJ:  "When you went into the building there at A Company, 1st battalion, did you know what you were going -- that you were going to -- you knew you were going to go in and steal some stuff, correct?
>
> ACC:  Yes, sir.
>
> MJ:  What was your -- what -- did you have an idea at the time you went in there of what you were going to do with that stuff?
>
> ACC:  I -- I did, sir.  We planned on making some sort of profit off of it, sir.

MJ: So you meant to profit. You didn't know exactly how, but there was going to be something. You either were going to sell it or trade it or do something with it, correct?

ACC: Yes, sir.

. . . .

MJ: Would there have been anything in there that you would have wanted to keep for yourself? Was that the idea of going in?

ACC: No, sir.

MJ: The idea was always to sell something?

ACC: Yes, sir.

MJ: And you would -- did you -- you said make -- when he proposed to you, he said, in fact, "Make some easy cash," correct?

ACC: Yes, sir.

MJ: So he -- so when you walked in there, you had the idea that there was going to be some sort of sale happen, correct?

ACC: Yes, sir.

MJ: All right. Because they don't keep cash inside the supply room, correct?

ACC: I don't believe they do, sir.

MJ: So you weren't intending to steal money; you were intending to steal something and then sell it, right?

ACC: Yes, sir.

The military judge found appellant guilty, *inter alia*, of both specifications of conspiracy.

**LAW AND DISCUSSION**

A conspiracy exists when one "enters into an agreement with" another and "performs an overt act for the purpose of bringing about the object of the conspiracy." *Manual for Courts-Martial, United States* (2008 ed.), Part IV, ¶ 5.b. As we noted in *United States v. Finlayson,* 58 M.J. 824, 826-27 (Army Ct. Crim. App. 2003):

> "[C]onspiracy is a partnership in crime." *Pinkerton v. United States*, 328 U.S. 640, 644 (1946). The essence of a conspiracy is in the "agreement or confederation to commit a crime, and that is what is punishable as a conspiracy, if any overt act is taken in pursuit of it." *United States v. Bayer*, 331 U.S. 532, 542 (1947); *see Braverman v. United States*, 317 U.S. 49, 53 (1942). As such, it is ordinarily the agreement that forms the unit of prosecution for conspiracy, "even if it contemplates the commission of several offenses." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 683 (3rd ed. 1982) (citing *Braverman*, 317 U.S. at 53); *see United States v. Pereira*, 53 M.J. 183, 184 (C.A.A.F. 2000) (finding single conspiracy to commit murder, robbery, and kidnapping); *cf. United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 221 & n.3 (1952) (introducing concept of "unit of prosecution")
>
> . . . .
>
> Whether a single conspiracy or multiple conspiracies existed in a given circumstance is a question of fact determined by reference to the totality of the circumstances. *See United States v. Fields*, 72 F.3d 1200, 1210 (5th Cir. 1996); 16 AM. JUR. 2D *Conspiracy* § 11 (2002). As the United States Supreme Court noted long ago, "the character and effect of a conspiracy [are] not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Patten*, 226 U.S. 525, 544 (1913).

The factors used to determine the number of conspiracies include: "(1) the objectives and (2) nature of the scheme in each alleged conspiracy; (3) the nature of the charge and (4) the overt acts alleged in each; (5) the time and (6) location of each of the alleged conspiracies; (7) the conspiratorial participants in each; and (8) the degree of interdependence between the alleged conspiracies." *Id.* at 827.

After weighing these factors, we conclude appellant and his co-conspirator, engaged in a single conspiracy to commit two crimes – namely, to unlawfully enter the supply company room to steal government property, and to sell it for "easy

cash." While the two charged conspiracies have different overt acts associated with them, the objective of the conspiracy is the same – to steal government property and sell it to make money. The two underlying charged conspiracies arose from the same conversation, between the same two parties, at the same place and time, for the same purposes – with one meeting of the minds. Appellant and his co-conspirator's acts were interdependent. We, therefore, conclude appellant and his co-conspirator had a single conspiratorial criminal agreement.

## CONCLUSION

After consideration of the entire record of trial, Specifications 1 and 2 of Charge I are consolidated into a single specification, denominated The Specification of Charge I, to read as follows:

> In that [appellant], U.S. Army, did, at or near Joint Base Lewis-McChord, between on or about 1 April 2013 and 21 April 2013, conspire with [SPC] J.R.H. to commit offenses under the UCMJ, to wit: unlawfully enter the supply room of Alpha Company, 1st Battalion, 17th Infantry Regiment, the property of the U.S. Army, with the intent to commit a criminal offense, to wit: steal and sell military property of a value of more than $500.00, and in order to effect the objects of the conspiracy the said [appellant] and [SPC] J.R.H. did unlawfully enter Building 11351, Alpha Company, 1st Battalion, 17th Infantry Regiment and sell military property.

The finding of guilty of The Specification of Charge I, as so amended, is AFFIRMED. The finding of guilty of Specification 2 of Charge I is set aside and DISMISSED. The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) we AFFIRM the approved sentence. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside and dismissed by this decision, are ordered restored. *See* UCMJ arts. 58b(c), and 75(a).

5

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court