# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Major WILLIAM G. INMAN**
**United States Army, Appellant**

ARMY 20150042

Headquarters, III Corps and Fort Hood
Wade N. Faulkner, Military Judge
Colonel Ian G. Corey, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA, Captain Joshua G. Grubaugh, JA (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major Steven J. Collins, JA; Captain Anne C. Hsieh, JA (on brief).

4 May 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A panel of officers sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of conspiracy, one specification of dereliction in the performance of his duties, six specifications of false official statement, one specification of larceny, one specification of fraud against the United States, seven specifications of conduct unbecoming an officer, and one specification of wrongfully communicating a threat, in violation of Articles 81, 92, 107, 121, 132, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 907, 921, 932, 933, and 934 (2006 & 2012) [hereinafter UCMJ].  The panel sentenced appellant to confinement for twenty months, a reprimand, and a $50,000 fine.  The military judge credited appellant with 241 days of confinement credit.  The convening authority approved the sentence as adjudged and the confinement credit.

INMAN–ARMY 20150042

We now review appellant's case under Article 66, UCMJ. Appellant raises four assignments of error requiring discussion and relief. The matters raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) do not warrant discussion or relief.

## BACKGROUND

On 11 July 2008, after nine-plus years of marriage, appellant and his spouse, Mrs. K.I., legally divorced. Appellant initiated the divorce to avoid splitting his retirement benefits with his spouse. The couple agreed, however, to withhold knowledge about their divorce from the Army so Mrs. K.I. could continue to use her military dependent identification (ID) card to receive medical services under the guise of being a military dependent. Appellant also allowed Mrs. K.I. to live with him after their divorce – but sleeping in a separate bedroom.

In April 2009, Mrs. K.I. lost her military dependent ID card while appellant was stationed at Fort Sam Houston, Texas. To obtain a new ID card, appellant and Mrs. K.I. traveled to Austin, Texas, where they submitted an application for a replacement, without informing the Army of their divorce.

Additionally, from 2009 to 2013, appellant filled out four separate emergency data forms claiming he was married to Mrs. K.I.. In July 2010, appellant filled out a travel voucher and a request for temporary lodging expenses (TLE), claiming Mrs. K.I. as his spouse, and thereby receiving per diem and expenses for her. In June 2011, when filling out a form for a new security clearance, appellant listed Mrs. K.I. as his former spouse. Additionally, in April 2013, after the investigation into appellant's conduct had already begun, the Defense Enrollment Eligibility Reporting System (DEERS) was updated with his divorce decree.

Between 2008 and 2013, Mrs. K.I. received medical goods and services worth over $20,000 to which she was not entitled to due to their divorce.

## LAW AND DISCUSSION

### A. Conspiracy

Appellant was found guilty, *inter alia*, of two separate specifications of conspiracy: 1) conspiracy to commit larceny by not notifying TRICARE that appellant and Mrs. K.I. were officially divorced resulting in Mrs. K.I. receiving over $20,000 in medical benefits; and 2) conspiracy to make or use a false writing in connection with claims under Article 132 – both for the purpose of allowing Mrs. K.I. to continue to obtain medical care through TRICARE by falsely claiming they were still married, and resulting in a loss to the U.S. Government of over $20,000.

2

Appellant argues he should only be convicted of a single conspiracy. The government concedes this issue and we accept that concession. A conspiracy exists when one "enters into an agreement with" another and "performs an overt act for the purpose of bringing about the object of the conspiracy." *Manual for Courts-Martial, United States* (2008 ed.), pt. IV, ¶ 5.b. As we noted in *United States v. Finlayson*:

> Whether a single conspiracy or multiple conspiracies existed in a given circumstance is a question of fact determined by reference to the totality of the circumstances. *See United States v. Fields*, 72 F.3d 1200, 1210 (5th Cir. 1996); 16 AM. JUR. 2D *Conspiracy* § 11 (2002). As the United States Supreme Court noted long ago, "the character and effect of a conspiracy [are] not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Patten*, 226 U.S. 525, 544 (1913).

58 M.J. 824, 827 (Army Ct. Crim. App. 2003) (footnote omitted); *see also Braverman v. United States*, 317 U.S. 49, 53 (1942) ("The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one."); *United States v. Pereira*, 53 M.J. 183, 184 (C.A.A.F. 2000) ("A single agreement to commit multiple offenses ordinarily constitutes a single conspiracy.").

The factors used to determine the number of conspiracies include: "(1) the objectives and (2) nature of the scheme in each alleged conspiracy; (3) the nature of the charge and (4) the overt acts alleged in each; (5) the time and (6) location of each of the alleged conspiracies; (7) the conspiratorial participants in each; and (8) the degree of interdependence between the alleged conspiracies." *Finlayson*, 58 M.J. at 827.

After weighing these factors, we conclude, under the totality of the circumstances, appellant and his co-conspirator engaged in a single conspiracy with diverse means to effectuate the object of the conspiracy – namely, to fraudulently allow Mrs. K.I. to continue to obtain medical care through TRICARE by falsely claiming she and appellant were still married, and using the dependent ID card to obtain medical benefits. The nature of the scheme was the same – to falsely represent a legal marriage. While the overt acts were different, the objective was the same – to fraudulently obtain medical benefits for Mrs. K.I.. The participants were the same and their acts were interdependent. Each act committed herein was towards the same ongoing course of conduct. We conclude that sufficient facts to distinguish separate conspiracies from one another do not exist, and appellant and his co-conspirator had a single criminal agreement to steal TRICARE benefits and use false documents to do so.

3

*B. Use of the Military Dependent ID Card to Obtain Services*

Appellant was convicted of four offenses specifically related to submitting false claims resulting in over a $20,000 loss to the government in wrongfully obtained medical services:

> 1). Negligently failing to report his divorced status to TRICARE and the military (Charge II and its Specification);

> 2). Conduct unbecoming an officer for not retrieving Mrs. K.I.'s dependent ID card (Specification 9 of Charge VIII);

> 3). Filing a false claim for the dependent ID card (Charge VII and its Specification); and

> 4). Obtaining medical benefits through false pretenses by using the dependent ID card (Specification 5 of Charge IX).

Appellant argues the government charged him under alternate theories of criminal liability for the same course of conduct and those overlapping charges should be dismissed. When a fact finder "return[s] guilty findings for [multiple] specifications and it was agreed that these specifications were charged for exigencies of proof, it [is] incumbent either to consolidate or dismiss a specification." *United States v. Elespuru*, 73 M.J. 326, 329 (C.A.A.F. 2014) (quoting *United States v. Mayberry*, 72 M.J. 467, 467-68 (C.A.A.F. 2013) (internal citations and quotation marks omitted)).

In conformance with the government's theory at trial, and as conceded by the government on appeal, this court should dismiss Charge II and its Specification (dereliction of duty for failing to notify TRICARE and the military that appellant was divorced), Specification 9 of Charge VIII (conduct unbecoming an officer for not retrieving the dependent ID card), and Specification 5 of Charge IX (obtaining medical services under false pretenses). We agree and will do so in our decretal paragraph.

*C. Unreasonable Multiplication of Charges*

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts–Martial 307(c)(4). "[T]he prohibition against unreasonable multiplication of charges addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19,

4

INMAN–ARMY 20150042

23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Id*. at 39 (internal citation and quotation marks omitted) (internal alteration reflects the holding in *Quiroz* that "unreasonably" was the appropriate legal standard).

Appellant was convicted, *inter aila,* of six specifications of conduct unbecoming an officer for filing false documents which portrayed he was still married, and six specifications of false official statement for filing the same false documents. Appellant alleges the two sets of charges are an unreasonable multiplication of charges and we agree. Because these corresponding specifications mirror one another and relate to substantially similar transactions, application of the *Quiroz* factors to the evidence obliges this court to dismiss the six conduct unbecoming an officer specifications to reflect only one transaction for each offense rather than two. We will take this action in our decretal paragraph.

**CONCLUSION**

After consideration of the entire record of trial, appellant's assignments of error, and the matters personally raised by appellant pursuant to *Grostefon*, Specifications 1 and 2 of Charge I are consolidated into a single specification, denominated the Specification of Charge I, to read as follows:

> In that [appellant], U.S. Army, did, in Texas, between on or about 1 June 2009 and 1 December 2013, conspire with Mrs. K.I. to commit the offenses of larceny under Article

5

121, UCMJ, and making or using a false writing in connection with claims under Article 132, UCMJ, and in order to effect the objects of the conspiracies: 1) wrongfully agreed to not notify TRICARE they were officially divorced; and, 2) fraudulently obtained a dependent ID card for Mrs. K.I. so she could continue to obtain medical care through TRICARE by falsely claiming they were still married, and using the dependent ID card to get medical benefits resulting in a loss to the U.S. Government of over $20,000.

The finding of guilty of Specification 2 of Charge I is set aside and is DISMISSED. The finding of guilty of Charge I and its Specification, as so amended, is AFFIRMED.

The findings of guilty as to Charge II and its Specification, Specification 5 of Charge IX, and Charge VIII and its Specifications, are set aside and those charges and specifications are DISMISSED.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence due to the military judge's consolidation of most of the offenses for sentencing. Second, although appellant was sentenced by members, this factor carries less weight here because the remaining offenses do not "address service custom, service discrediting conduct or conduct unbecoming." *Winckelmann*, 73 M.J. at 16. Third, the gravamen of appellant's misconduct remains unchanged. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence based on the errors noted, the entire record, and in accordance with the principles of *Winckelmann*, the sentence is AFFIRMED. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his findings set aside by our decision, are ordered restored.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court